SEALED

AO 91 (Rev. 11/11)   Criminal Complaint

## UNITED STATES DISTRICT COURT

FILED

for the

Central District of Illinois

AUG 3 1 2012

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | CLERK OF THE COURT |
| | ) | U.S. DISTRICT COURT |
| | ) | Case No. CENTRAL DISTRICT OF ILLINOIS |
| | ) | 12- 3052 -m |
| | ) | |
| ALEX GARDNER | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____See Attachment_____ in the county of _____See Attachment_____ in the _____Central_____ District of _____Illinois_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | knowingly and intentionally possessed with the intent to distribute 500 or more grams of a Schedule II controlled substance, namely, cocaine |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

**s/ Scott Giovannelli**

*Complainant's signature*

Scott Giovannelli--DEA Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___8/31/12___

**s/ Byron G. Cudmore**

*Judge's signature*

City and state: _____Springfield, Illinois_____

Byron G. Cudmore, United States Magistrate Judge

*Printed name and title*

STATE OF ILLINOIS         )
                                 ) ss

COUNTY OF SANGAMON   )

## A F F I D A V I T

Scott Giovannelli being first duly sworn hereby depose and state:

1.     I am a Special Agent with the Drug Enforcement Administration (DEA) currently assigned to the Springfield, Illinois Resident Office (RO).  I have been employed with the Drug Enforcement Administration since March 1996.  Prior to my employment with the Drug Enforcement Administration, I was employed as a Police Officer with the Village of Palatine, Illinois for approximately 5 ½ years.  I have prepared criminal affidavits, executed search warrants, and have testified at criminal trials during my participation in drug investigations.

2.     The information contained in this affidavit is based upon my personal knowledge of this investigation, and upon information provided by other law enforcement personnel. This affidavit does not contain all the facts known to agents, only those believed to be necessary to establish probable cause.

3.     This affidavit is made in support of an application for a Complaint charging Alex GARDNER with possession of 500 or more grams of cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1).  A warrant for the arrest of the defendant is requested.

4.     During the course of this investigation, agents/officers have obtained information from multiple sources/methods which indicated that Eddi Ramirez and others associated with Ramirez are responsible for the distribution of cocaine in the Central Illinois area. Agents identified 76 E. Court, Decatur, IL, as a residence utilized as a "stash-house" or drug distribution location for this organization. Agents have conducted numerous surveillance operations, to

include both physical and electronic surveillance of this location. Agents have observed numerous subjects, to include Ramirez, frequent this location, and have identified numerous rental vehicles frequent this residence.

5. In approximately March 2012, agents obtained information which revealed that in February 2012, a female identified as Erica Kulak had been stopped in Texas while utilizing a 2004 Pontiac Grand Prix with an Illinois registration. This particular Pontiac had been identified by agents as a vehicle utilized by this organization to transport both illegal drugs and money. Agents have observed this Pontiac at the 76 E. Court residence on several occasions.

6. During interviews of cooperating defendants and confidential sources, Kulak was identified as a "driver" or distributor of cocaine for Ramirez and this organization.

7. On April 24, 2012, agents conducted a surveillance operation, which started by receiving information that Kulak, Ramirez and others were at 76 E. Court and a supply of cocaine had allegedly been delivered to this location for distribution. During this operation, Kulak was observed utilizing a Chrysler Pacifica bearing Indiana Dealer registration C853771. During the course of this surveillance, agents followed Kulak (only occupant) to Springfield. Kulak was observed at the Walgreens store located on Stevenson Drive. While at Walgreens, Kulak was observed opening the back hatch of the Pacifica. She appeared to pick up the lid to the spare tire area and retrieve a white plastic bag. Kulak then appeared to utilize a black sweater to wrap around the white plastic bag, and she placed this in the driver's side area of the Pacifica. Kulak then entered the Walgreens.

8. A short time later, agents observed Kulak exit the Walgreens and enter the Pacifica. Agents then observed another silver Chrysler Pacifica bearing IL temporary registration

774N840 (registered to: Karen Maxwell, 3535 E. Cook, Lot 94, Springfield) enter the Walgreens parking lot. Agents observed Kulak follow the driver of the other Pacifica (774N840) and both departed the parking lot. Agents followed Kulak and the other Pacifica to 2917 S. State, Springfield, where both vehicles parked. A short time later, Kulak departed this residence in her Pacifica and traveled east from Springfield.

9.    During this investigation, agents conducted several different surveillance operations at 2917 S. State, Springfield. Agents had observed rental vehicles at this location and also observed a green Jeep, bearing IL temporary registration 833N279 (registered to: Karen Maxwell) parked in the driveway.

10.    On June 25, 2012, while conducting electronic surveillance of 76 E. Court, Decatur, agents observed a silver Chrysler 4-door bearing IL registration L113054 (registered to: EAN Holdings/Enterprise Rentals) arrive and park at this residence. Agents observed Erica Kulak exit this Chrysler and enter the residence. During this operation, agents observed the silver Chrysler traveling west on I-72, and verified the registration as L113054. The Chrysler was only occupied by Kulak. Agents followed Kulak to Springfield.

11.    At approximately 5:00 p.m., Kulak parked in the lot near Burlington Coat Factory on South McArthur, and Kulak remained inside the Chrysler. At approximately 5:12 p.m., agents observed a green Jeep, later verified as bearing IL temporary registration 833N279 (previously observed at 2917 South State, Springfield) arrive and park next to the Chrysler. Agents observed the male/black driver, later identified as Alex GARDNER (wearing a blue baseball cap) exit the Jeep and enter the passenger seat of the Chrysler. Approximately one minute later, Kulak exited the driver's seat and retrieved some type of bag from the trunk of the

Chrysler, and then provided this bag to GARDNER, who attempted to secure this grey colored bag under his shirt/clothing as he re-entered the Jeep.

12.     At approximately 5:14 p.m., both the Jeep and Chrysler departed the parking lot onto southbound McArthur Blvd. At the time the Jeep exited this parking lot, a marked Springfield PD patrol unit, which was going to be utilized to conduct a traffic stop, also began to travel south on McArthur with the emergency lights activated. Agents observed the Jeep turn into the parking lot of the Rocket Stop Store, located at 2800 S. McArthur. Agents observed the Jeep travel towards the drive-thru lane and then pull around the back of the building, out of sight of agents. Agents observed that the only occupant in the Jeep was GARDNER, wearing the blue baseball cap. Agents briefly lost sight of the Jeep.

13.     At approximately 5:18 p.m., agents observed the Jeep parked in the driveway at 2917 S. State, and one to two minutes later a subject approached the passenger side of the Jeep (appearing to come from 2917 S. State), and the Jeep then departed. At approximately 5:23 p.m., on Whittier at Highland Street, a marked Springfield PD unit conducted a traffic stop on the Jeep. The driver of the Jeep was identified as Anna Lopinto and the passenger was identified as Alex GARDNER (wearing the same blue baseball cap seen by agents). After checking GARDNER's name through a criminal data base, officers were advised that GARDNER was wanted on active warrants. He was arrested.

14.     During the time of the traffic stop, agents returned to the Rocket Stop store to check the area where the Jeep had been seen after meeting with Kulak. An agent reported that as he looked into a fenced-in area, located directly behind the business, he observed what appeared to be a kilogram-shaped, taped package lying on the ground. Agents made contact with an

employee of this business, and agents were allowed access into this secured, fenced-in area. Agents located another kilogram-shaped package, partially inside a plastic bag, a cellular telephone battery and a black cellular telephone lying on the ground. Employees reported they clean up this area (where the items were located) daily, and the items seized by agents were not seen inside this secured area earlier that day. Agents took custody of the suspected kilograms of cocaine and cellular telephone. Agents later conducted presumptive tests on the contents of both kilogram packages, and both tests produced positive results for the presence of cocaine.

15.    Rocket Stop employees indicated security video cameras surrounded this business and the area where the items were located. Agents were allowed to review the business video recordings. During a review of the video recording, agents observed the Jeep travel around the rear of the Rocket Stop, and the driver (GARDNER) could be seen throwing the grey plastic bag (which had contained the kilograms and cellular telephone) out of the driver's side window into the fenced-in area. Agents made a recording of this video.

16.    Based on my training and experience, I know that two kilograms of cocaine is an amount consistent with an intention to distribute and not for personal use. In addition, DEA fingerprint analysis has confirmed that a fingerprint for GARDNER and Kulak were identified on the seized plastic bag.

s/ Scott Giovannelli

Special Agent Scott Giovannelli
Drug Enforcement Administration

Subscribed and sworn to before me
this 31st day of August, 2012.

s/ Byron G. Cudmore

BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE